Approved:  _____
           JACOB R. FIDDELMAN / KEDAR S. BHATIA
           Assistant United States Attorneys

Before:    THE HONORABLE DEBRA FREEMAN
           United States Magistrate Judge
           Southern District of New York

---------------------------------------X
                                       :   **20 MAG 9074**
                                       :   SEALED COMPLAINT
UNITED STATES OF AMERICA               :
                                       :   Violation of
            - v. -                     :   21 U.S.C. § 846
                                       :
                                       :   COUNTY OF OFFENSE:
KEITH HALLIBURTON,                     :   NEW YORK
                                       :
                   Defendant.          :
                                       :
---------------------------------------X

SOUTHERN DISTRICT OF NEW YORK, ss:

        RAYMOND MCGRATH, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA"), and charges as follows:

### COUNT ONE
(Narcotics Conspiracy)

        1.  From at least in or about July 2020, up to and including in or about August 2020, in the Southern District of New York and elsewhere, KEITH HALLIBURTON, the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

        2.  It was a part and an object of the conspiracy that KEITH HALLIBURTON, the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

        3.  The controlled substance that KEITH HALLIBURTON, the defendant, conspired to distribute and possess with intent to distribute was one kilogram and more of mixtures and substances

containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge of the foregoing charge are, in part, as follows:

4. I am a Special Agent with the DEA, and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. Based on my participation in this investigation, including my personal observations, my review of recordings and law enforcement reports, draft transcripts of recorded communications, and my conversations with other law enforcement officers, I have learned the following, in substance and in part:

   a. Since in or about mid-2019, the DEA has been investigating a drug trafficking organization ("DTO") transporting heroin from an overseas country ("Country-1") to the New York City area. As part of that investigation, an undercover law enforcement officer ("UC-1") has positioned himself as an individual who can transport large quantities of narcotics from Country-1 to New York City and who has access to kilogram-level quantities of heroin in New York City for sale to others for distribution. As part of those undercover efforts, a phone number for UC-1 has been provided to members of the Country-1-based DTO as a way for individuals looking to purchase and redistribute heroin to contact UC-1.

   b. On or about July 24, 2020, shortly after UC-1's phone number was provided to the Country-1-based DTO, UC-1 received an incoming phone call from a certain phone number ("Phone-1"), which I believe, based on my participation in this investigation, indicates that the person using Phone-1 had been given UC-1's phone number by a DTO associate who understood UC-1 to be in possession of heroin in the New York City area for distribution on behalf of the DTO. The call was recorded by law enforcement. In substance and in part, the person using Phone-1, later identified as KEITH

2

HALLIBURTON, the defendant, as described below, identified himself as "Abu." In substance and in part, UC-1 told HALLIBURTON that UC-1 was putting "it" together and that UC-1 and HALLIBURTON would talk again soon.[1] UC-1 stated that UC-1 was in the New York area, to which HALLIBURTON responded that he was not in the New York area but would get there. Based on my training and experience and my involvement in this investigation, I believe that HALLIBURTON was reaching out to UC-1 to arrange to pick up narcotics, and that UC-1's response that UC-1 was putting it together referred to UC-1's purported efforts to obtain and prepare heroin to supply to HALLIBURTON for redistribution.

        c.  On or about July 28, 2020, UC-1 spoke by telephone with HALLIBURTON, who was using Phone-1. The call was recorded by law enforcement. In substance and in part, UC-1 told HALLIBURTON that the "shipment" would arrive at the end of the week and that UC-1 would put aside "five" for HALLIBURTON, and HALLIBURTON confirmed the planned transaction. Based on my training and experience and my participation in this investigation, I know that UC-1 used the term "shipment" to refer to a large quantity of heroin, that the term "five" referred to five kilograms of heroin, and I believe that HALLIBURTON was confirming to UC-1 that HALLIBURTON or his associates intended to receive the referenced five kilograms of heroin from UC-1 now that UC-1's shipment of narcotics had arrived in New York.

        d.  Over the next several days, UC-1 spoke by telephone several additional times with HALLIBURTON, who continued to use Phone-1, and UC-1 arranged to meet in person with HALLIBURTON on or about August 7, 2020 at a particular time and location in Manhattan, New York ("Location-1"). Many of these calls were recorded by law enforcement. As set forth below, HALLIBURTON sent a co-conspirator to the meeting at Location-1 to execute the drug deal with UC-1. While payment for the heroin was not explicitly discussed on these calls, based on my training and experience, I know that DTOs often arrange for payment for narcotics through separate channels in order to reduce the possibility of law enforcement detection and/or interception.

        e.  On or about August 7, 2020, at the agreed-upon time, law enforcement agents established surveillance at Location-1. UC-1 was present at Location-1 carrying a black bag containing five one-kilogram bricks of sham narcotics consistent with the appearance of heroin (the "Sham Kilograms"). At approximately 4:50

---

[1] Descriptions and quotations of recorded communications set forth herein are based on review of the recordings and draft summaries and transcripts of those recordings.

p.m., agents observed a silver Chevrolet vehicle with Indiana license plates ("Vehicle-1") arrive at Location-1 and park near UC-1. UC-1 approached the driver's side window of Vehicle-1. The ensuing transaction was observed by law enforcement and audio recorded. UC-1 opened the black bag and showed the Sham Kilograms to the driver of Vehicle-1 ("CC-1"). CC-1 looked in the bag and saw the Sham Kilograms and then took the bag from UC-1. In addition to CC-1, who was driving Vehicle-1, an adult female and a minor child were inside Vehicle-1. UC-1 walked away from Vehicle-1 as Vehicle-1 began to drive off. Law enforcement agents then stopped Vehicle-1 and detained CC-1. The bag containing the Sham Kilograms was recovered from the front passenger-side floor of Vehicle-1.

      f.   Thereafter, CC-1 was advised of his *Miranda* rights and agreed to speak with law enforcement. In substance and in part, the following occurred during the interview. CC-1 stated that he knew he was picking up drugs and was doing so on behalf of a friend named "Keith Halliburton," located in Indiana or Illinois. CC-1 stated that HALLIBURTON had asked him to go to New York. CC-1 claimed not to know what type of drugs were involved in the transaction. CC-1 stated that HALLIBURTON wanted CC-1 to bring the drugs back to Indiana/Illinois upon CC-1's return. CC-1 also provided the agents with verbal consent to search CC-1's two cellphones, recovered incident to his arrest. The agents accessed the phones and confirmed that neither of CC-1's cellphones was Phone-1. CC-1 identified an entry saved in the address book of one of his cellphones as HALLIBURTON's phone number, and the agents confirmed that the saved phone number was the phone number for Phone-1, which HALLIBURTON had used to arrange for the drug transaction, as described above. In CC-1's phone, Phone-1 was saved with the name "Kha." Based on my review of criminal history records, I have learned that "Khalifah" is an alias used by HALLIBURTON.

      g.   Later that day, after CC-1 was detained, UC-1 received two phone calls from "blocked" numbers where the incoming call number was not shown. Based on my training and experience, I have learned that individuals who conduct narcotics transactions often contact co-conspirators after a transaction is scheduled to take place to confirm that the transaction was completed.

      h.   Based on my review of criminal history records, I have learned that HALLIBURTON has multiple prior felony drug convictions. Most recently, on or about August 8, 2018, HALLIBURTON pleaded guilty in the United States District Court for the Central District of Illinois to possessing with intent to distribute narcotics, to wit, cocaine, crack cocaine, and marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), (b)(1)(C), and

(b)(1)(D). On or about December 14, 2018, HALLIBURTON was sentenced to 120 months' imprisonment, to be followed by 8 years' supervised release. On or about May 16, 2020, HALLIBURTON filed a motion for compassionate release. On or about June 11, 2020, HALLIBURTON's motion for compassionate release was granted and the district court reduced HALLIBURTON's sentence to time served and eight years' supervised release, with the first six months to be spent in home confinement.

   i.   Court records show that on or about June 11, 2020, HALLIBURTON was released from federal custody and began serving six months' home confinement as part of his term of supervised release.

   j.   Subscriber records for Phone-1 show that the subscriber account for that phone was activated on or about June 12, 2020, *i.e.*, the day after HALLIBURTON was released from imprisonment. Based on my training, experience, and participation in this investigation, I believe that the foregoing facts, as well as those set forth below, further confirm that HALLIBURTON is the user of Phone-1, and the individual who coordinated the August 7, 2020 heroin transaction with UC-1.

   k.   Based on my review of court records and communications with other law enforcement officers, I am aware that since his release from imprisonment, HALLIBURTON has been authorized to serve his term of home confinement at a particular address in Decatur, Illinois (the "Halliburton Residence"). HALLIBURTON requested permission to travel on or about July 25, 2020, to Springfield, Illinois. HALLIBURTON's probation officer granted the request. Location information obtained pursuant to a judicially-authorized warrant for Phone-1, *i.e.*, the phone HALLIBURTON used to communicate with UC-1, shows that HALLIBURTON traveled from in or around Decatur to in or around Springfield on or about July 25, 2020. Likewise, HALLIBURTON requested permission to travel on or about August 3, 2020, to Springfield. HALLIBURTON's probation officer granted the request. Location information for Phone-1 shows HALLIBURTON again traveling from in or around Decatur to in or around Springfield on or about August 3, 2020.

   l.   Except for approximately a handful of instances, location information for Phone-1 shows that it was regularly in the vicinity of the Halliburton Residence from approximately July 1, 2020, through August 8, 2020.

   m.   Subscriber records for Phone-1 do not list a subscriber name, but list a particular email address ("Email Address-1"). Email Address-1 references HALLIBURTON's wife's first

5

name, who has been identified through a review of open source records. Toll records show Phone-1 has been in contact with another phone number ("Phone-2") that also has Email Address-1 listed in its subscriber information. The user of Phone-2, listed in subscriber records, is HALLIBURTON's wife.

      n. Based on my training and experience, I have learned that individuals serving terms of supervised release are required to give their probation officer contact information that can be used to reach the person under supervision. Based on my communications with another law enforcement officer who has communicated with HALLIBURTON's probation office, I know that HALLIBURTON provided a particular phone number to his probation officer as HALLIBURTON's contact number ("Phone-3").

      o. Toll records for the phone UC-1 used to coordinate the August 7, 2020 transaction described above (the "UC-1 Phone") show that the UC-1 Phone received two phone calls from Phone-3 on August 7, 2020, shortly after the arrest of CC-1. Based on my training and experience, I believe these are the two "blocked" calls that UC-1 received after CC-1 was detained.

   WHEREFORE, I respectfully request that a warrant be issued for the arrest of KEITH HALLIBURTON, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

s/Raymond McGrath, by the Court, with permission
_____
RAYMOND MCGRATH
Special Agent
Drug Enforcement Administration

Sworn to me through the transmission of this
Complaint by reliable electronic means (FaceTime),
pursuant to Federal Rule of Criminal Procedure
4.1, this 25th day of August, 2020

_____
THE HONORABLE DEBRA FREEMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK